UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT of INDIANA

<u>CASE NO. 1:22-cv-01217-SEB-DML</u>

JOEY KIMBROUGH,

      Plaintiff,

  v.

SNAP-ON CREDIT LLC;

EXPERIAN INFORMATION
SOLUTIONS, INC (*settled and
dismissed*);

EQUIFAX INFORMATION
SERVICES LLC (*settled and
dismissed*);

SNAP-ON INCORPORATED;

NICHOLAS T. PINCHUK (*official
and individual capacities*);

JOSEPH J. BURGER (*official and
individual capacities*);

KAREN L. DANIEL (*official and
individual capacities*);

DAVID C. ADAMS (*official and
individual capacities*);

      Defendants.

**<u>PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY
DEMAND</u>**

THE PLAINTIFF NOW APPEARS, JOEY KIMBROUGH ("Plaintiff"), acting pro se, alleges violations of the Fair Credit Reporting Act ("FCRA") by SNAP-ON CREDIT LLC ("Defendant"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Defendant"), EQUIFAX INFORMATION SERVICES LLC ("Defendant"), SNAP-ON INCORPORATED ("Defendant"), NICHOLAS T. PINCHUK ("Defendant"), JOSEPH J. BURGER ("Defendant"), KAREN L. DANIEL ("Defendant"), and DAVID C. ADAMS ("Defendant").

## INTRODUCTION

1. Plaintiff's Complaint is based on the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

2. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and

other information on consumers. The FCRA also sets obligations on "furnishers," who offer credit information to credit reporting organizations.

3. The FCRA shields consumers from the serious risk of harm that might otherwise result from inaccurate reporting through a complex system of procedural safeguards. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

4. Plaintiff, Pro Se, brings this action to challenge the actions of Defendant(s) with regard to erroneous reports of derogatory credit information to national reporting agencies and Defendant(s) failure to properly investigate Plaintiff's disputes.

5. Defendant(s) failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

7. Unless otherwise stated, all conduct engaged in by the Defendant(s) took place in Indiana.

8.  Defendant(s) committed each of these violations knowingly, willfully, and intentionally, and Defendant(s) did not maintain procedures reasonably adapted to avoid such violations.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction under 28 U.S.C. § 1331, § 1337, and 15 U.S.C. 1681(p).

10. Jurisdiction of the court arises pursuant to 15 U.S.C. § 1681(p), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy."

11. Venue and personal jurisdiction in this district are proper because Defendant(s) do or transacts business within the district and a material portion of the events at issue occurred in this district.

## PARTIES

12. Plaintiff is a natural person residing in Kokomo, Indiana.

13. Plaintiff resided in Kokomo, Indiana, at all times relevant and all actions related to Plaintiff stated herein took place in or around Kokomo, Indiana.

14. Plaintiff is a consumer as that term is defined by 15 U.S.C. § 1681a(c).

15. Defendant (Snap-On Credit LLC) is a Delaware Limited Liability Company with its principal place of business located at 950 Technology Way, Suite 301,

Libertyville, Illinois 60048-5339 and which conducts business in the State of Indiana.

16. Defendant (Experian Information Solutions, Inc.) is an Ohio Foreign For-Profit Corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626 and which conducts business in the State of Indiana.

17. Defendant (Equifax Information Services LLC) is a Georgia Foreign Limited Liability Company with its principal place of business located at 1550 Peachtree Street, NW, H-46, Atlanta, Georgia 30309 and which conducts business in the State of Indiana.

18. Defendant (Snap-on Incorporated) is a Delaware For-Profit Corporation with its principal place of business located at 8028 28th Avenue, Kenosha, Wisconsin 53140 and which conducts business in the State of Indiana.

19. Defendant (Nicholas T. Pinchuk) is the Chairman and Chief Executive Officer of Snap-on Incorporated. Mr. Pinchuk has complete oversight of all day-to-day operations of Snap-on Incorporated and its subsidiaries.

20. Defendant (Joseph J. Burger) is the President of Snap-on Credit LLC. Mr. Burger has oversight of the day-to-day operations of the entire Snap-on Credit LLC team.

21. Defendant (Karen L. Daniel) is a Board Member for the publicly traded Snap-on Incorporated and is the Chairperson for the *Organization and Executive Compensation Committee.*

22.  Defendant (David C. Adams) is a Board Member for the publicly traded Snap-on Incorporated and is the Chairperson for the *Corporate Governance & Nominating Committee.*

23. Defendant(s) are a person as that term is defined by 15 U.S.C. § 1681a(b).

24. Defendant(s) business includes obtaining and using consumer credit reports for the professed purpose of using such information in connection with credit transactions involving consumers, as contemplated by 15 U.S.C. § 1681b.

25. Defendant(s) acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

26. Defendant(s) agents, employees, officers, members, directors, and representatives were working within the course and scope of their employment when taking the actions stated herein.

## GENERAL ALLEGATIONS

27. Plaintiff alleges that Defendant(s) are incorrectly reporting that Plaintiff's account is closed, with inaccurate high credit limit, with inaccurate date last active, and with incomplete and inaccurate payments history.

28. Plaintiff alleges that if a data furnisher decides to report an account, the FCRA requires complete and accurate reporting; therefore, a data furnisher cannot pick and choose which portions of the account to report. If a data furnisher reports an account, then it should report all portions of that

account in a manner which complies with the maximum accuracy and completeness standard of the FCRA.

29. Plaintiff alleges that Defendant(s) are familiar with the FCRA requirements and credit reporting industry standards and subscribes thereto.

30. Plaintiff alleges that Defendant(s) understands that deviation from the FCRA requirements or credit reporting industry standards can, and often does, result in the denial of credit, higher interest rates, and prompts a negative inference that would not be drawn if the data were reported in accordance with the recognized standards.

31. Plaintiff alleges that Defendant(s) actions alleged herein were committed knowingly, intentionally, and in reckless disregard of the unambiguous meaning of the FCRA, regulatory guidelines on accurate reporting, and credit reporting industry standards to purposefully undermine Plaintiff's ability to repair his credit score.

32. In the alternative, Plaintiff alleges that Defendant(s) actions were the result of negligent policies, procedures, and an objectively unreasonable interpretation of the FCRA, all which inevitably led to inaccurate, misleading, or incomplete credit reporting.

## **FACTUAL ALLEGATIONS**

33. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

A.  **e-OSCAR**

34.  e-OSCAR is the web-based system developed by Experian, Equifax, TransUnion, and Innovis that enables Data Furnishers and CRAs to create and respond to consume credit disputes.

35.  When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-OSCAR to the appropriate Data Furnisher.

36.  The ACDV contains codes next to certain data fields associated with a credit file.

37.  When a data furnisher reports on a consumer's account as part of its regular reporting, it sends a regular monthly transmission to each CRA.

38.  When a data furnisher reports on a consumer's account outside of its regular monthly transmission, it sends an automated universal dataform ("AUD") to each CRA.

B.  **Plaintiff's Consumer Report Contains Inaccurate Adverse Tradelines, which Plaintiff Disputed Multiple Times to no Avail**

39.  On or about February 9th, 2022, Plaintiff ordered a three-bureau credit report from Identity IQ to ensure that proper reporting by Plaintiff's creditors ("the February 9th Credit Reports").

40.  Plaintiff noticed adverse tradelines in his February 9th Credit Reports, reporting inaccurate, misleading, or incomplete information that did not comply with the FCRA standards.

41. Plaintiff then disputed the inaccurate tradelines regarding the account with Snap-On Credit LLC via USPS certified mail with a tracking number 7020 3160 0001 0598 9410 on February 14th, 2022.

42. Defendant received said certified letter pointing out the inaccurate Snap-On Credit LLC tradeline and was signed for by Colleen Finerty on February 18th, 2022.

43. Plaintiff's Dispute Letter specifically put Snap-On Credit LLC on notice that, they were violating the FCRA and a cure would be to "fix or delete" the inaccuracies.

44. Specific inaccuracies in this first attempt to correct were around the "High Credit Limit" being reported as $12,358.00 as reported by Experian and $7,075.00 as reported by Equifax. A second inaccuracy was proven to Snap-On Credit LLC as the "Date Last Active" being reported 8/1/2020 as reported by Experian and 6/1/2020 as reported by Equifax.

45. The "Date Last Active" inaccuracy is mentioned as utmost important as the court uses that date to determine statute of limitations claims.

46. Plaintiff's Dispute Letter detailed what was perceived to be problematic about the Snap-On Credit LLC reporting, addressing each tradeline individually.

47. Plaintiff made a simple request that the derogatory reported be updated to ensure accuracy and completeness of the accounts as required by the FCRA.

48. Plaintiff is informed and believes that Experian and Equifax each received Plaintiff's Dispute Letters and, in response, sent Plaintiff's disputes to Snap-On Credit LLC, as the data furnisher, via an ACDV through e-OSCAR.

49. On or about March 3rd, 2022, Plaintiff received a letter from Snap-On Credit LLC Compliance Department.

50. The letter stated "We have received your correspondence regarding the above referenced account with Snap-On Credit LLC. Pursuant to your request, we have concluded our review of your account and have validated:"

51. Snap-On Credit LLC said "The account and amounts owed as set forth in your contract are correct as is the currently reported balance of amounts due are correct, and"

52. Snap-On Credit LLC said "The information we have provided to the credit reporting agencies accurately represents your account activity with Snap-On Credit LLC to the best of our knowledge."

53. Snap-On Credit LLC said "As a result, no changes will be made to your account with the credit reporting agencies at this time."

54. On March 12th, 2022, Plaintiff ordered a second three-bureau credit report from Identity IQ to determine if the reporting on the account was updated.

55. Plaintiff having discovered that Snap-On Credit LLC failed to cure the inaccuracies filed a complaint with the Better Business Bureau ("BBB") as a cause for remedy.

56. The BBB complaint filed on March 17th, 2022, listed the inaccuracies and once again asked for cure in the form of fix or delete which is the requirement as outlined in the FCRA.

57. A response from Snap-On Credit LLC was received from this complaint by Michael H. Walsh with a title of "Director of Compliance/Ass't Corporate Counsel".

58. Mr. Walsh in his official capacity states "I write on behalf of Snap-on Credit LLC ("SOC) in response to the complaint about Snap-on Credit logged by Mr. Joey Kimbrough.

59. Mr. Walsh in his official capacity states "I note at the outset that Snap-on Credit does not do business with consumers; rather it finances the acquisition of tools, tool storage, and diagnostic equipment by professional auto mechanics and technicians who use the product in their work, not for personal, family, or household purposes."

60. Mr. Walsh in his official capacity states "The transaction about which Mr. Kimbrough complains is a commercial transaction."

61. Mr. Walsh in his official capacity states "A review of the claims that Mr. Kimbrough has made through the e-oscar system about what SOC is reporting to the credit reporting agencies reveals that Mr. Kimbrough thinks that SOC is reporting the original/high credit amount and the date as last active as inaccurately."

62. Mr. Walsh in his official capacity states "SOC has again reviewed its records and maintains that this information is, in fact, being reported accurately."

63. Plaintiff upon belief that Snap-On Credit LLC is going to continue to violate the FCRA as written and report inaccuracies authored a second letter in good faith.

64. This second letter was sent certified mail on March 17th, 2022, via USPS with tracking number 7020 3160 0001 4569 0956 and was signed for on March 21st, 2022, by Colleen E. Finerty.

65. The second letter indicated that Snap-On Credit LLC's "reporting of inaccurate information has caused severe damage to my character, my reputation, my general mode of living, and my ability to obtain credit for personal and household uses."

66. The second letter indicated to Snap-On Credit LLC "You and your inaccurate reporting have damaged my livelihood."

67. The second letter highlighted 15 USC 1681 s-2 "Responsibilities of furnishers of information to consumer reporting agencies"

68. The second letter also defined "Duty, Accurate, and Prohibition" as outlined through the FCRA.

69. The second letter defined the IRS 2021 Publication 4681. "Even if you don't receive a Form 1099-C, you must report cancelled debt as gross income on your tax return."

70. The IRS clearly defines a charge off as Gross or Ordinary Income. Therefore, Income does not get reported on the Consumer Report which in fact make Snap-On Credit LLC's reporting of this account as inaccurate.

71. By definition the IRS clearly says a canceled debt or charge-off is income. The reporting of this account as a debt is inaccurate.

72. 15 USC 1681 s-2 says that Snap-On Credit LLC is a furnisher of information to a consumer reporting agency.  Therefore, Snap-On Credit LLC is prohibited by law to furnish incorrect/inaccurate information.

73. 15 USC 1681 s-2(a)(1)(A) says "A person shall not furnish any information to relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."

74. Snap-On Credit LLC was put on Notice that they were reporting inaccurate information through the letter dated March 17th, 2022.

75. Plaintiff requested a Form 1099-C as is required from Snap-On Credit LLC as is written by the IRS Publication 4681.  Snap-On Credit LLC has failed to send through this mandated IRS Form based off of the charge-off status of the debt in question.

76. Plaintiff offered as a cure in this second letter that Snap-On Credit LLC delete the inaccurate information.

77. Defendant never replied to the letter dated March 17th, 2022, that was signed for by them on March 21st, 2022 and continued reporting inaccuracies after having been put on Notice therefore continuing to damage Plaintiff.

78. On April 12th, 2022, Plaintiff ordered a third three-bureau credit report from Identity IQ to determine if the reporting on the account was updated.

79. This three-bureau report showed that Snap-On Credit LLC was still knowingly and willingly reporting out inaccuracies to the detriment of the Plaintiff.

80. On April 17th, 2022, Plaintiff sent a third letter certified via USPS under tracking number 7020 3160 0001 0598 9465 signed for by Melissa Moon.

81. The third letter was clearly listed as a "Notice of Intent to Sue".

82. The third letter further reiterated that "the reporting of inaccurate information has caused severe damaged to my character, my reputation, my general mode of living, and my ability to obtain credit for personal and household uses."

83. The third letter offered a final cure as "remove the inaccurate account off of my consumer report and to pay the violations as listed in the enclosed invoice."

84. The third letter stated "Failure to cure within 10 days from the receipt of this letter will result in a Civil suit being filed for these requests. At the point of a suit filed I will be also asking the court for actual damages as outlined in 15 USC 1681(o) and 15 USC 1681(n)."

85. The third letter once again showed the Statement of Inaccuracies as reported by Snap-On Credit LLC.

86. On June 6th, 2022, Defendant's Compliance Department sent a letter to Plaintiff indicating "Dear Mr. Kimbrough, We have received your recent correspondence regarding the above referenced account with Snap-On Credit. Please be advised that we have completed our investigation and determined that your tradeline should be deleted from your file."

87. Defendant's letter further states "We have submitted a request to the credit reporting agencies to process this update."

88. Defendant's admitting that the "inaccurate" reporting of the tradeline and removal comes too late!

89. Plaintiff was gracious with three attempts to cure.  Two of those attempts was a willingness to just have the inaccuracies fixed or deleted as is clearly outlined in the FCRA.  The third attempt to cure was nothing more than a meager compensation for the statutory violations Snap-On Credit LLC was committing.

90. Plaintiff was continually ignored by Defendant over several months and suffered actual damages as a result of willful and negligent reporting of inaccuracies.  The only cure now is actual damages, statutory damages, and punitive damages as the court sees fit.

**C. Inaccuracy – Snap-On Credit LLC**

91. Despite actual knowledge, Snap-On Credit LLC continued to report Plaintiff's account, ending in XXXXX215 to Equifax with inaccurate and incomplete "High Credit Limit" and "Date Last Active".

92. Despite actual knowledge, Snap-On Credit LLC continued to report Plaintiffs account, ending in XXXXX215 to Experian with inaccurate and incomplete "High Credit Limit" and "Date Last Active".

93. Reporting a "Commercial Account" as an "Individual Account" and reporting as such on an individual's consumer report is patently incorrect. In addition, these inaccurate and incomplete tradelines are misleading in a way that can adversely affect credit decisions.

94. Plaintiff alleges that Snap-On Credit LLC did not investigate the inaccuracies that were presented to them.

95. Experian and Equifax both provided notice to Snap-On Credit LLC that Plaintiff was disputing the inaccurate and misleading information, but Snap-On Credit LLC failed to conduct a reasonable investigation of the information as required by the FCRA.

96. Based on Plaintiff's disputes, the provided notice(s) by the CRAs, and Snap-On Credit LLCs own internal records, Snap-On Credit LLC should have known that Plaintiff's account was being misrepresented and was in fact inaccurately being reported.

97. The most basic investigation would include a simple review of internal documentation on the account compared to its reporting in order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA.

98. Plaintiff alleges that Snap-On Credit LLC did not review if its reporting complied with the FCRA standards for credit reporting, the dispute letters it received from Plaintiff, the dispute letters it received from the CRAs, or its own internal records concerning Plaintiff's account.

99. If Snap-On Credit LLC reviewed such standards and records, Snap-On Credit LLC would have seen that its reporting was not in compliance and was therefore inaccurate or incomplete. At the very least, the investigation would reveal that there were valid concerns as relayed multiple times by Plaintiff.

100. Snap-On Credit LLC should have ensured that the "same" High Credit Limit was being reported by Equifax and Experian.  Snap-On Credit should have ensured that the "same" Date Last Active was being reported by Equifax and Experian. Snap-On Credit LLC should have ensured that the "same" Date of Last Payment was reflected by Equifax and Experian. Snap-On Credit LLC should have ensured that the "Bureau Code" was accurately listed as "Commercial" and NOT "Individual" as is reported by Equifax and Experian.

101. By continuing to report Plaintiff's account to Equifax as described in paragraph 91 and to Experian as described in paragraph 92, it incorrectly appears to third parties viewing Plaintiff's credit report that he has a grossly exaggerated high credit limit, and the date of last activity is vast.  Further, it also appears to a third party that the account is an individual account (not commercial) and that the account is inaccurately listed as derogatory.

102.    Further, as this inaccurate reporting is being used to calculate Plaintiff's Credit Score, the credit score alone being what most lenders use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

103.    As payment history makes up thirty-five percent (35%) of a consumer's credit score, and as most lenders approve or deny credit based on a consumer's credit score (as opposed to pouring through each tradeline of every account listed to obtain context), the incorrect and incomplete payment history reported by Snap-On Credit LLC is lowering Plaintiff's credit score, which adversely affects his ability to obtain credit.

104.    The lack of investigation and reporting of inaccurate and incomplete information by Snap-On Credit LLC is unreasonable.

**D. Inaccuracy and Oversight – Snap-on Incorporated**

105.    Snap-on Incorporated is the parent company to Snap-on Credit LLC.

106.    Snap-on Incorporated is a publicly traded company on the New York Stock Exchange.

107.    Snap-on Incorporated, being the parent company, has or should have oversight of the governance of all corporate entities to ensure that the public is protected pursuant to all applicable laws.

108.    One law, with specificity, would be the Fair Credit Reporting Act ("FCRA") as written into law by Congress.

109.  Plaintiff alleges that Snap-on Incorporated does not have a system in place to ensure maximum accuracy of reported credit information as is required by the FCRA.

110.  Snap-on Incorporated's lack of a proper procedure to ensure accurate credit reporting has caused Plaintiff irreparable harm and actual damages to include lost credit and emotional distress.

## E. Inaccuracy and Oversight – Nicholas T. Pinchuk

111.  Nicholas T. Pinchuk ("Mr. Pinchuk") is the Chairman and Chief Executive Officer of Snap-on Incorporated.

112.  Mr. Pinchuk has complete oversight of all operations of Snap-on Incorporated, to include all subsidiaries of the brand.

113.  Mr. Pinchuk, in his role, is responsible for ensuring a system is in place to accurately report consumers credit information to the credit reporting agencies.

114.  Mr. Pinchuk has failed to implement a system to ensure maximum possible accuracy of reported credit information for his consumers as is required by Congress through the FCRA.

115.  Mr. Pinchuk's failure to ensure maximum accuracy has resulted in irrepairable harm and actual damages to include lost credit and emotional distress to Plaintiff.

## F. Inaccuracy and Oversight – Joseph J. Burger

116.     Joseph J. Burger ("Mr. Burger") is the President of Snap-on Credit LLC.

117.     Mr. Burger has complete oversight of Snap-on Credit LLC.

118.     Mr. Burger, in his role, is responsible for ensuring a system is in place to accurately report consumers credit information to the credit reporting agencies.

119.     Mr. Burger has failed to implement a system to ensure maximum possible accuracy of reported credit information for his consumers as is required by Congress through the FCRA.

120.     Mr. Pinchuk's failure to ensure maximum accuracy has resulted in irrepairable harm and actual damages to include lost credit and emotional distress to Plaintiff.

## G. Inaccuracy and Oversight – Karen L. Daniel

121.     Karen L. Daniel ("Ms. Daniel") is a Board Member of Snap-on Incorporated and the Chairperson on the Organization & Executive Compensation Committee.

122.     Ms. Daniel, in her official and individual capacities, is responsible for the oversight of *Snap-on Incorporated Organization & Executive Compensation Committee Charter ("The Charter")*.

123.     The Charter, clearly states "Each member of the *Organization and Executive Compensation Committee* ("the Committee") shall meet the independence requirements of applicable law…"

124.     Plaintiff believes that *The Charter's* "applicable law" would include the FCRA as written by Congress and introduced as law.

125.     Plaintiff alleges that the *Organization and Executive Compensation Committee* as led by Chairperson Daniel is ignoring the statutory duties and responsibilities, of the FCRA, as written into law and signified/outlined in *The Charter*.

126.     Ms. Daniel and the *Organization & Executive Compensation Committee* have failed to implement a system to ensure maximum possible accuracy of their customers reported credit information.

127.     Ms. Daniel and the *Organization & Executive Compensation Committee's* failure to ensure maximum accuracy has resulted in irrepairable harm and actual damages to include lost credit and emotional distress to Plaintiff.

**H. Inaccuracy and Oversight – David C. Adams**

128.     David C. Adams ("Mr. Adams") is a Board Member of Snap-on Incorporated and the Chairperson of the *Corporate Governance & Nominating Committee*.

129.     Mr. Adam's, in his official and individual capacities, is responsible for the oversight of *Snap-on Incorporated's Corporate Governance and Nominating Committee Charter ("The Charter")*.

130.    The Charter, clearly states "Each member of the *Corporate Governance & Nominating Committee* ("the Committee") shall meet the independence requirements of applicable law…"

131.    Plaintiff believes that *The Charter's* "applicable law" would include the FCRA as written by Congress and introduced as law.

132.    Plaintiff alleges that the *Corporate Governance & Nominating Committee* as led by Chairperson Adams is ignoring the statutory duties and responsibilities, of the FCRA, as written into law and signified/outlined in *The Charter*.

133.    Mr. Adam's and the *Corporate Governance & Nominating Committee* have failed to implement a system to ensure maximum possible accuracy of their customers reported credit information.

134.    Mr. Adam's and the *Corporate Governance & Nominating Committee's* failure to ensure maximum accuracy has resulted in irrepairable harm and actual damages to include lost credit and emotional distress to Plaintiff.

## I. Damages

135.    Plaintiff pulled the credit reports at issue at a cost for access to the reports, after the dispute process, specifically for the sole purpose of verifying that the inaccuracies were fixed.

136.    As a result of the inaccurate reporting, Plaintiff has incurred out-of-pocket expenses, and has also suffered emotional harm, physical sickness, and excessive stress resulting in doubt as to the effectiveness of the Fair

Credit Reporting Act and the power of this Court to preserve and perpetuate Plaintiff's rights to accurate credit reporting as intended by Congress.

137.    Plaintiff has been denied credit and is unable to rebuild his credit based on the inaccurate reporting y Snap-On Credit LLC. Further, Plaintiff's diminished creditworthiness, resulting from Snap-On Credit LLC's inaccurate reporting, has caused him to abandon his intentions to apply for certain credit.

138.    Snap-On Credit LLC's actions, as alleged herein, Snap-on Incorporated's actions, as alleged herein, Nicholas T. Pinchuck's actions, as alleged herein, Joseph J. Burger's actions, as alleged herein, Karen L. Daniel's, actions, as alleged herein, and David C. Adams actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b).

**FIRST CAUSE OF ACTION (VIOLATION OF FCRA 15 U.S.C. § 1681E(B))**

139.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above as if fully stated herein.

**A. Experian and Equifax Each Failed to Assure Credit Reporting Accuracy**

140.    Experian and Equifax (collectively, the "CRA Defendants") each violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of

Plaintiff's consumer reports and the credit files it published and maintained concerning Plaintiff.

141.    Had Experian maintained reasonable procedures to assure maximum accuracy, Experian would never have allowed Snap-On Credit LLC to report the account as described herein.

142.    Experian knew, or should have known, (1) that Snap-On Credit LLC account was reporting inaccuracies based on Plaintiff's dispute(s) and provided documentation, and (2) the account was inaccurately listed as Individual when it was in fact a Commercial account as mentioned by Snap-On Credit LLC. Further, Experian knew, or should have known, that this inaccurate and incomplete reporting does not reflect maximum possible accuracy and completeness as required by the FCRA.

143.    Had Equifax maintained reasonable procedures to assure maximum accuracy, Equifax would never have allowed Snap-On Credit LLC to report the account as described herein.

144.    Equifax knew, or should have known, (1) that Snap-On Credit LLC account was reporting inaccuracies based on Plaintiff's dispute(s) and provided documentation, and (2) the account was inaccurately listed as Individual when it was in fact a Commercial account as mentioned by Snap-On Credit LLC. Further, Equifax knew, or should have known, that this inaccurate and incomplete reporting does not reflect maximum possible accuracy and completeness as required by the FCRA.

145.     Congress specifically recognized the "elaborate mechanism developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." Nayab v. Capital One Bank (USA), NA, 942 F. 3d 480, 492 (9th Cir. 2019). The investigation and evaluation of Plaintiff's creditworthiness, credit standing, credit capacity, character, and general reputation as a consumer are all damaged by the inaccurate reporting the CRA Defendants allowed.

146.     As a result of the CRA Defendants' violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

**B. Willful Violations**

147.     The CRA Defendants' violations, as described herein, were willful; specifically, the CRA Defendants have intentionally and purposefully set up a system where inaccuracies are not only probable, but inevitable.

148.     The CRA Defendants regularly, as a policy, ignore disputes by consumers and fail to perform even a basic investigation regarding disputes. Additionally, the CRA Defendants regularly fail to forward disputes to data furnishers, thereby frustrating the entire dispute process.

149.     To the extent that the CRA Defendants do send consumer disputes, the CRA Defendants send these disputes to employees who do not live within the

continental United States to hide or subvert a consumer's liability to confront the individual(s) directly responsible for approving accurate reporting.

150.    The CRA Defendants' respective employees receive little to no training concerning how to accurately report consumer debt.

151.    Instead, the CRA Defendants' respective employees are instructed to parrot whatever information a data furnisher provides regardless of whether the information is accurate.

152.    The CRA Defendants' respective employees are regularly expected to review and approve over ninety (90) disputes per day, rendering less than five (5) minutes to review, investigate, and respond to each dispute received.

153.    The CRA Defendants' have intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

154.    As a result of the CRA Defendants' violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

155.    The CRA Defendants' violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

156.    In the alternative, each of the CRA Defendants' were negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681(o).

157.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from the CRA Defendants in an amount to be determined by this Court pursuant to 15 U.S.C § 1681(n) and § 1681(o).

## SECOND CAUSE OF ACTION (VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C. §§ 1681s-2(b) and 1681i(a)(1))

158.     Plaintiff re-alleges and incorporates the allegations in each and every paragraph by reference as if fully stated herein.

### A. Snap-On Failed to Reinvestigate Following Plaintiff's Dispute

159.     Pursuant to 15 U.S.C. § 1681s-2(b), data furnishers are prohibited from providing any information relating to a consumer to any CRA if it knows, or has reasonable cause to believe, that the information is inaccurate or misleading and requires data furnishers to update and/or correct inaccurate information after a CRA notifies it of a consumer dispute.

160.     Snap-On Credit LLC sent an AUD or monthly transmission to Experian and Equifax which reported "High Credit", "Date Last Active", and "Bureau Code".

161.     After receiving the Dispute Letters, Snap-On Credit LLC did not correct the "High Credit Limit" or "Date Last Active" as indicated by Plaintiff. Instead, Snap-On Credit LLC verified and re-reported the inaccurate information to the CRAs via ACDV to each.

162.    Once the account inaccuracies were presented in the three dispute letters, the account should be reporting to reflect the current high credit limit and date last active. Not doing so makes the reporting patently incorrect and very likely to mislead a credit reviewer of the consumers' performance and liability on the debt.

163.    Snap-On Credit LLC violated 15 U.S.C. § 1681s-2(b) by either failing to conduct an investigation or failing to conduct a reasonable investigation, and re-reporting misleading and inaccurate account information.

164.    Experian and Equifax both provided notice to Snap-On Credit LLC that Plaintiff was disputing the inaccurate and misleading information; however, Snap-On Credit LLC failed to conduct a reasonable investigation as required by the FCRA.

165.    Based on Plaintiff's disputes along with a review of its own internal records, Snap-On Credit LLC should have reported the Correct "High Credit" amount to both CRAs. Further, Snap-On Credit LLC should have reported the Correct "Date Last Active" to both CRAs.

166.    Since Snap-On Credit LLC has already decided to report this "Commercial Account" on Plaintiff's personal consumer report, as evidenced by it showing up on his personal report, once it received the Dispute Letters, it had a duty to review all relevant information, and update any incorrect or inaccurate information to each of the CRAs. Inaccurate information includes

not only the information reported, but also for omissions that render the reported information misleading.

167.    Reporting an account which has years of positive payment history, with multiple inaccuracies is patently incorrect.

168.    In addition, this inaccurate reporting also adversely affects credit decisions. This inaccurately reported account is being considered when calculating Plaintiff's Credit Score. Most lenders, employers, and other individuals who access a consumer's credit report approve or deny credit or employment based upon the reported credit score and do not take time to look through each tradeline of every account listed to obtain context. Therefore, Snap-On Credit LLC's reporting as described herein has a direct adverse effect on Plaintiff's Credit Score and his ability to rebuild his Credit Score and obtain new credit.

169.    The lack of investigation by Snap-On Credit LLC, as required by the FCRA, in unreasonable.

**B. Willful Violations**

170.    Plaintiff alleges that Snap-On Credit LLC has reported based upon objectively unreasonable interpretations of the FCRA standards of credit reporting and regulatory guidelines on how to accurately report under the FCRA.

171.    Plaintiff further alleges that Snap-On Credit LLC has not properly trained those directly investigating disputes on FCRA requirements or credit

reporting industry standards and, as such, has developed reckless policies and procedures.

172.    Plaintiff alleges that rather than train its employees on accurate credit reporting, FCRA requirements, and industry standards, Snap-On Credit LLC's employees tasked with reviewing disputes are expected to confirm the information being reported as "accurate" instead of investigating the reported information.

173.    In the alternative, Snap-On Credit LLC was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681(o).

## C. The CRA Defendants Each Failed to Reinvestigate the Disputed Information in Violation of 15 U.S.C. § 1681i(a)(1)

174.    Pursuant to 15 U.S.C. § 1681i(a)(1), the CRA Defendants were each required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's disputes regarding the Snap-On Credit LLC account.

175.    Thus, the CRA Defendants each failed to conduct a reasonable and correct the misleading and/or inaccurate statements on the account within the statutory time frame.

176.    The CRA Defendants are not passive entities bound to report whatever information a data furnisher provides.

177.    Plaintiff alleges the CRA Defendants are readily familiar with the FCRA requirements and credit reporting industry standards.

178.    Based on the foregoing, Plaintiff alleges that the CRA Defendants can, and do, suppress inaccurate information from being reported when data furnishers provide inaccurate information.

179.    The CRA Defendants can and do instruct data furnishers on how to properly report certain accounts from time to time upon request from a data furnisher.

180.    Experian failed to conduct a reasonable investigation because any basic investigation would have uncovered that Snap-On Credit LLC was not reporting the account at hand correctly.

181.    Had Experian conducted a proper investigation it could have updated the account information as reflected in the dispute letters to indicate the correct information. However, Experian continued to report the account as described herein.

182.    Experian, therefore, did not conduct even the most basic investigation regarding the requirements set forth in the FCRA or credit reporting industry standards, otherwise the aforementioned would have been uncovered.

183.    In the alternative, Plaintiff alleges that Experian did not send an ACDV to Snap-On Credit LLC to confirm accurate reporting on its account. Despite receiving the dispute letters providing notice of inaccuracies, Experian did not correct the tradeline or conduct an investigation.

184.    Equifax failed to conduct a reasonable investigation because any basic investigation would have uncovered that Snap-On Credit LLC was not reporting the account at hand correctly.

185.    Had Equifax conducted a proper investigation it could have updated the account information as reflected in the dispute letters to indicate the correct information. However, Equifax continued to report the account as described herein.

186.    Equifax, therefore, did not conduct even the most basic investigation regarding the requirements set forth in the FCRA or credit reporting industry standards, otherwise the aforementioned would have been uncovered.

187.    In the alternative, Plaintiff alleges that Equifax did not send an ACDV to Snap-On Credit LLC to confirm accurate reporting on its account. Despite receiving the dispute letters providing notice of inaccuracies, Equifax did not correct the tradeline or conduct an investigation.

188.    In the alternative, if the CRA Defendants deemed Plaintiff's dispute letters "frivolous or irrelevant" under 15 U.S.C. § 1681i(a)(3), the CRA Defendant failed to notify Plaintiff of such determination as required by 15 U.S.C. § 1681i(a)(3)(B). As Plaintiff received no such notice from the CRA Defendants, Plaintiff alleges the CRA Defendants deemed his Dispute Letters valid, and this triggered its obligation under 15 U.S.C. § 1681i(a)(1) and (2)(A), for which they did not comply.

**THIRD CAUSE OF ACTION (Violation of Fair Credit Reporting Act**

**15 U.S.C. § 1681i(a)(4))**

189.     Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

### A. The CRA Defendants Each Failed to Review and Consider all Relevant Information

190.     The CRA Defendants each violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff; specifically, the Dispute Letter evidence.

191.     The CRA Defendants violations of 15 U.S.C. § 1681i(a)(4) have caused Plaintiff to suffer actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

### B. Willful Violations

192.     The CRA Defendants violations were willful, rendering each individually liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

193.     In the alternative, the CRA Defendants were each negligent in failing to review and consider all relevant information Plaintiff submitted, which entitles Plaintiff to recovery under 15 U.S.C. § 1681(o).

194.     Plaintiff is entitled to recover actual damages, statutory damages, cost and attorneys' fees from the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n) and § 1681(o).

## FOURTH CAUSE OF ACTION (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))

195.     Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

### A. The CRA Defendants Each Failed to Delete Disputed and Inaccurate Information.

196.     The CRA Defendants each violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

197.     The CRA Defendants violations of 15 U.S.C. § 1681i(a)(5)(A) have resulted in Plaintiff suffering actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

### B. Willful Violations

198.     The CRA Defendants violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court and pursuant to 15 U.S.C. § 1681(n).

199.    In the alternative, the CRA Defendants were each negligent, which entitles Plaintiff to recovery pursuant to 15 U.S.C. § 1681(o).

200.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from the CRA Defendants in an amount to be determined by the Court and pursuant to 15 U.S.C. § 1681(n) and § 1681(o).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a.  For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

b.  Award statutory and actual damages pursuant to 15 U.S.C. § 1681(n);

c.  Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681(n);

d.  Award attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §§ 1681(n) and 1681(o);

e.  For determination by the Court that Defendants policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681(n), *et seq*.; and

f.  For determination by the Court that Defendants policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681(o)

Respectfully submitted,

Dated: October 26th, 2022                              /s/ *Joey Kimbrough*

Joey Kimbrough

Plaintiff

Joeykokomo2002@yahoo.com

(765) 437-8451